UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AGNES T. SCOTT &                   :
HARRY SCOTT,                       :
            Plaintiffs,            :
                                   :
      v.                           :        CA 10-375 S
                                   :
UNITED STATES OF AMERICA,          :
            Defendant.             :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

      Before the Court is the United States of America's Motion to
Dismiss Plaintiffs' Complaint (Docket ("Dkt.") #3) ("Motion to
Dismiss" or "Motion").   Defendant United States of America
("Defendant" or the "United States") contends that this action
should be dismissed for lack of subject matter jurisdiction and for
failure to state a claim upon which relief can be granted.   See
Motion; see also Fed. R. Civ. P. 12(b)(1), 12(b)(6).

      The Motion has been referred to me pursuant to 28 U.S.C. §
636(b)(1)(B) for preliminary review, findings, and recommended
disposition.   After reviewing the filings, listening to oral
argument, and performing independent research, I recommend that to
the extent the Motion is based on the Rhode Island Recreational Use
Statute ("RUS"), R.I. Gen. Laws § 32-6-1 et seq., the Motion be
converted to a motion for summary judgment and granted.   To the
extent that the Motion is not based on the RUS, I recommend that it

be granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction over the claim of Plaintiff Harry Scott ("Mr. Scott").

## I. Conversion of Motion

The Motion is based primarily on Defendant's contention that the RUS applies to this case and that the statute immunizes the United States from liability. See Memorandum of Law in Support of the United States of America's Motion to Dismiss Plaintiffs' Complaint ("Defendant's Mem.") at 5-9. Indeed, as to Plaintiff Agnes T. Scott ("Mrs. Scott") this is the sole basis for the Motion. See id. at 1-9. However, controlling First Circuit law, which neither counsel brought to the Court's attention, holds that a recreational use statute "is an affirmative defense, to be pleaded by defendant," DiMella v. Gray Lines of Boston, Inc., 836 F.2d 718, 720 (1st Cir. 1988)(citing Fed. R. Civ. P. 8(c); Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920 (1980)), and that it cannot "be raised by a motion to dismiss unless the complaint itself supplie[s] the basis," id. (citing Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984)).

Here Defendant's RUS defense is not clear from the face of the Complaint. The pleading only states that Mrs. Scott was legally on the premises owned by Defendant, Complaint ¶ 7, and does not explain why she was there. Given this skeletal averment, Mrs. Scott could have been a business invitee, in which case the RUS would not apply. Cf. Konar v. PFL Life Ins. Co., 840 A.2d 1115,

1123 (R.I. 2004)("[A] landowner owes ... a business invitee a duty to use reasonable care to keep [its] premises in a safe condition for the purposes of the invitation.")(quoting <u>Dawson v. Rhode Island Auditorium, Inc.</u>, 242 A.2d 407, 413 (R.I. 1968))(alterations in original).   Thus, the Complaint does not supply the basis for Defendant's Motion to Dismiss as to Mrs. Scott, and pursuant to <u>DiMella</u>, 836 F.2d at 720, the RUS cannot be raised by a motion to dismiss.[1]

Accordingly, to the extent the Motion is based on the RUS, I recommend that the Motion be converted to a motion for summary judgment because it is based on a fact which, although undisputed, is not contained within the Complaint.[2]   <u>See</u> <u>Giragosian  v.  Ryan</u>,

_____

[1] The Court is cognizant that an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim "'[i]n an appropriate case.'"  <u>Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino</u>, 410 F.3d 41, 48 n.9 (1st Cir. 2005)(quoting <u>Greene v. Rhode Island</u>, 398 F.3d 45, 49 (1st Cir. 2005)(quoting <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 16 (1st Cir. 2003)))(alteration in original). However, for the reasons stated above, this is not an appropriate case.

[2] The undisputed fact not contained within the Complaint is that Mrs. Scott was at the Officers' Club to attend a private party. <u>See</u> Electronic Recording of 5/26/11 Hearing ("E.R.").

    THE COURT:  Your client went to attend a private party at
                the Officers' Club.  She did not pay any fee to
                the Officers' Club. Is that correct?

    MS. HUMPRHEYS:  That is correct.  I would, I would offer,
                    however, that brings us down the road of the
                    exceptions to the Recreational Use Statute
                    which we are not, we're not arguing that,
                    um, the Officers' Club falls within an
                    exception of the Recreational Use Statute,
                    we're arguing that the statute does not even
                    apply because of the commercial nature.

3

547 F.3d 59, 65 (1st Cir. 2008)("When ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering facts and documents that are part of or incorporated into the complaint. These limitations, however, are not absolute. A district court may also consider documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice. If the district court relies on other material outside the complaint, not subject to the qualifications listed above, it must convert a motion to dismiss into a motion for summary judgment.")(internal quotation marks and citations omitted).

Although the parties are entitled to reasonable notice of an impending conversion of a motion to dismiss to a motion for summary judgment and the opportunity to "present all materials made pertinent to that motion by Rule 56," Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 5 n.5 (1st Cir. 1998)(quoting Fed. R. Civ. P. 12(b)), conversion is improper only if it "would come as a 'surprise' or be 'unfair' to the party against whom judgment is rendered," Giragosian, 547 F.3d at 65 (quoting Clorox Co. of Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 31 (1st Cir. 2000)). Here the Court sees no unfairness to Mrs. Scott and Mr. Scott (collectively "Plaintiffs") because the fact at issue, the reason for Mrs. Scott's presence at the Officers' Club, is

E.R.

undisputed.  It was addressed by the parties in their memoranda and also in argument and colloquy at the hearing.  See Defendant's Mem. at 4 n.3 ("Plaintiff was a guest at a party held at the Officer[s'] Club."); Memorandum of Law in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss ("Plaintiffs' Mem.") at 2[3] (not disputing Defendant's statement and describing Mrs. Scott as "patronizing the Officer[s'] Club food and beverage services when she slipped and fell ..."); Electronic Recording of 5/26/11 Hearing ("E.R.").

In addition, I find that the "Moody exception" to the rule that a district court must notify parties of an intent to convert a 12(b)(6) motion to a motion for summary judgment applies in this case.  See Maldonado v. Dominguez, 137 F.3d 1, 5-6 (1st Cir. 1998) ("[W]hen a district court fails to give express notice to the parties of its intention to convert a 12(b)(6) motion into a motion for summary judgment, there is no reversible error if the party opposing the motion (1) has received materials outside the pleadings, (2) has had an opportunity to respond to them, and (3) has not controverted their accuracy.")(citing Moody v. Town of Weymouth, 805 F.2d 30, 31 (1st Cir. 1986)); see also Boateng v. Interam. Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)("[T]his

---

[3] The pages of Plaintiffs' Mem. are not numbered.  See DRI LR Cv 5(a)(3) ("Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page.").  The Court has performed this task and cites accordingly.

circuit does not mechanistically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment. Instead, we treat any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy.")(internal quotation marks omitted); <u>Moody</u>, 805 F.2d at 31 ("Because [p]laintiff has not shown that he would have done something different had the district court taken him by the hand and told him defendants' motion had been converted into a motion for summary judgment and that this something would likely have defeated defendants' motions, we conclude plaintiff has not demonstrated prejudice ...."). Here Plaintiffs received Defendant's memorandum containing the statement that "Plaintiff was a guest at a party held at the Officer[s'] Club," Defendant's Mem. at 4 n.3, Plaintiffs had the opportunity to respond to this statement both in their memorandum and at the hearing, and Plaintiffs have not controverted the accuracy of the statement. Thus, the "<u>Moody</u> exception," <u>Maldonado</u>, 137 F.3d at 6 (internal quotation marks omitted), applies.

Moreover, even if there were some dispute as to the accuracy of the statement, Plaintiffs still have the opportunity to file objections to this Report and Recommendation and to support those objections with an affidavit disputing this (or any other) fact

they believe this Magistrate Judge has misapprehended. The District Judge will then determine *de novo* any part of this Report and Recommendation to which Plaintiffs have properly objected. See Fed. R. Civ. P. 72(b)(3); see also Cox v. Hainey, 391 F.3d 25, 28 (1st Cir. 2004)(noting that the district judge "[u]pon de novo review, see Fed. R. Civ. P. 72(b), ... rejected the magistrate judge's view"). Thus, for this additional reason Plaintiffs are not prejudiced by the conversion of a portion of the instant Motion to one for summary judgment.

## II. Facts

This action is brought by Plaintiffs pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.[4] See Complaint ¶ 1. On September 12, 2008, Mrs. Scott was exiting the Officers' Club at the Naval Station in Newport, Rhode Island ("Newport Naval Station"). Complaint ¶¶ 7-8. She slipped and fell on a set of wet stairs, causing her to sustain severe personal injuries. Id. ¶ 8. Plaintiffs allege that Defendant negligently failed to: maintain the stairs, inspect the premises for dangerous conditions caused by weather, and warn Mrs. Scott about the steps. Id. ¶ 10. Plaintiffs seek compensation for medical bills and expenses, lost wages and lost earning capacity, pain and suffering,

---

[4] "Generally speaking, the United States enjoys immunity from suit. In the FTCA, ... Congress waived the government's sovereign immunity with respect to private tort actions. That waiver, however, is hedged by a number of restrictions and conditions." Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010).

and for Mr. Scott's loss of consortium.  Id. ¶¶ 18-19.

## III.  Travel

Plaintiffs filed their Complaint on September 13, 2010.  See Dkt.  Defendant was granted an extension to answer or otherwise respond to the Complaint.  See id.  On February 4, 2011, Defendant filed the instant Motion.  Plaintiffs requested and were granted an extension of time to respond to the Motion.  See id.  Their Objection to the Motion to Dismiss (Dkt. #6) was filed on March 22, 2011.  See id.  The Motion was referred to this Magistrate Judge, and a hearing on it was scheduled for May 5, 2011.  See id. Plaintiffs filed an emergency motion to continue the hearing to May 26, 2011, see Plaintiff's [sic] Emergency Motion to Continue (Dkt. #7), which was granted, see Dkt.  The hearing was held on May 26th, and thereafter the Court took the matter under advisement.

## IV.  Standard

### A.  Rule 12(b)(1)

When a defendant moves to dismiss for lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court bears the burden of proving its existence."  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)(quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  In considering a Rule 12(b)(1) motion, the court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.  Merlonghhi v. United States, 620 F.3d 50, 54

(1st Cir. 2010)(citing <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001)).

A trial court may consider extrinsic materials in passing upon a motion to dismiss pursuant to Rule 12(b)(1) without converting it into a motion for summary judgment. <u>See</u> <u>Dynamic Image Techs., Inc. v. United States</u>, 221 F.3d 34, 37 (1st Cir. 2000); <u>see also</u> <u>Gonzalez v. United States</u>, 284 F.3d 281, 288 (1st Cir. 2002)("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion.").

**B. Summary Judgment**

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Commercial Union Ins. Co. v. Pesante</u>, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); <u>accord</u> <u>Kearney v. Town of Wareham</u>, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000)(quoting <u>Sánchez v. Alvarado</u>, 101 F.3d 223,

227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." <u>Feliciano de la Cruz v. El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000)(citing <u>Mulero-Rodriguez v. Ponte, Inc.</u>, 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. <u>See</u> <u>Santiago-Ramos</u>, 217 F.3d at 53 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." <u>ATC Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002)(quoting <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." <u>Coyne v. Taber Partners I</u>, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore,

"[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." <u>Gannon v. Narragansett Elec. Co.</u>, 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

## V. Discussion

### A. Choice of Law

Under the FTCA, the United States may be liable for negligence only if a private person would be liable under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here the incident giving rise to Plaintiffs' claims occurred on the Newport Naval Station. Complaint ¶¶ 7-8. Accordingly, the Court applies Rhode Island law. <u>See</u> <u>González-Rucci v. U.S. Immigration & Naturalization Serv.</u>, 539 F.3d 66, 69 (1st Cir. 2008)("In an FTCA case such as this one, we glean the applicable substantive law from the state (or commonwealth) where the alleged tort occurred ....."); <u>Magee v. United States</u>, 121 F.3d 1, 6 (1st Cir. 1997) (applying law of situs state because "the FTCA directs us to determine the substantive law that would apply to a private individual under like circumstances in the jurisdiction where the injury occurred")(internal quotation marks omitted).

**B. Recreational Use Statute**

Defendant argues that the RUS applies to this case and that the statute immunizes it from liability. <u>See</u> Defendant's Mem. at 5-9. "The purpose of [the RUS] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability to persons entering thereon for those purposes." <u>Scott v. United States</u>, C.A. No. 07-328S, 2008 WL 2883789, at *2 (D.R.I. July 25, 2008)(quoting R.I. Gen. Laws § 32-6-1)(alteration in original); <u>see also</u> <u>Smiler v. Napolitano</u>, 911 A.2d 1035, 1038 (R.I. 2006)("To encourage landowners to open their property to the public for recreational use, [the RUS] limits landowners' liability for personal injuries sustained by the users of such properties."). The statute provides:

> Except as specifically recognized by or provided in § 32-6-5, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
>
> > (1) Extend any assurance that the premises are safe for any purpose;
> >
> > (2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
> >
> > (3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person.

R.I. Gen. Laws § 32-6-3. As used above, a "charge" is the "admission price or fee asked in return for invitation or

12

permission to enter or go upon the land."[5]   Id. § 32-6-2(1).
Section 32-6-5 specifically states that the statute has no
applicability "where the owner of land charges the person or
persons who enter or go on the land for the recreational use
thereof ...."  Id. § 32-6-5(a)(2).

### C. Plaintiffs' Arguments

Plaintiffs do not contend that Mrs. Scott paid a fee or charge
to enter the Newport Naval Station or the Officers' Club.   See
E.R.  Indeed, Plaintiffs do not contend that the Officers' Club
falls within an exception to the RUS.   See id.; see also n.2.
Rather, Plaintiffs argue that the statute is inapplicable because
the Officers' Club "is a commercial facility with a nature and
scope of operation much like a privately owned club, bar,
restaurant, banquet and events facility or dining establishment
located off Naval Station Newport."  Plaintiffs' Mem. at 9; see
also id. at 6 ("In the instant case, the Officer[s'] Club is
essentially a restaurant and banquet facility where patrons and
guests go to purchase food and beverage services whether they are
themselves paying customers or guests of a customer holding a
special event.").

As support for this argument, Plaintiffs cite language from
the Rhode Island Supreme Court's decisions in Hanley v. State, 837

---

[5] The RUS defines "Land" as "land, roads, water, watercourses,
private ways and buildings, structures, and machinery or equipment when
attached to the realty."  R.I. Gen. Laws § 32-6-2(2).

A.2d 707 (R.I. 2003), and <u>Morales v. Town of Johnston</u>, 895 A.2d.
721 (R.I. 2006). In <u>Hanley</u>, the court held that the RUS granted
immunity to the state from claims of negligence asserted by a
plaintiff who caught her foot on the raised edge of an asphalt road
while walking in a state park. <u>Hanley</u>, 837 A.2d at 713. The
<u>Hanley</u> court rejected the plaintiff's argument that the statute did
not apply to walking because it was passive activity. <u>Id.</u> In
doing so, the court explained that:

> Section 32-6-2(4) lists some, but not all, of the
> recreational activities contemplated by the statute.
> Considering that this nonexclusive list also includes
> "all other recreational purposes contemplated by this
> chapter[,]" § 32-6-2(4), it should be interpreted
> liberally. <u>See</u> <u>Rankey v. Arlington Board of Education</u>,
> ... 603 N.E.2d 1151, 1154 (Ohio Ct. App. 1992). That is
> because:
>
>> "The existence of statutory immunity does not
>> depend upon the specific activity pursued by
>> the plaintiff at the time of the plaintiff's
>> injury. Rather, *the inquiry should focus on*
>> *the nature and scope of activity for which the*
>> *premises are held open to the public*. The
>> goal is to determine the character of the
>> premises. *If the premises qualify as being*
>> *open to the public for recreational activity,*
>> *the statute does not require a distinction to*
>> *be made between plaintiffs depending upon the*
>> *activity in which each was engaged at the time*
>> *of the injury.*"

<u>Hanley v. State</u>, 837 A.2d at 713-14 (quoting <u>Rankey</u>, 603 N.E.2d at
1154)(first alteration in original). Plaintiffs suggest that
applying the above specified inquiry should result in the
conclusion that the Officers' Club is not "open to the public for
recreational activity ...," <u>id.</u>, and that, therefore, the statute

does not apply, <u>see</u> Plaintiffs' Mem. at 5 (citing <u>Hanley</u> and arguing that "the premises at the Officer[s'] Club are clearly distinguishable from the publicly owned park contemplated in <u>Hanley</u>").

In <u>Morales</u>, the Rhode Island Supreme Court concluded that the RUS did not apply to a town-owned soccer field and that, therefore, the statute did not bar the negligence claim of the plaintiff who stumbled into a water drain and was injured while playing in a high school soccer game. <u>Morales</u>, 895 A.2d at 732. The <u>Morales</u> court reiterated that the RUS "requires an examination of the nature and scope of the activities occurring on the land and thus mandates that the premises be available to the public for recreational purposes." <u>Id.</u> at 731. Examining those activities, the court noted that:

> This soccer field was not open to the public for recreational activities when Morales was injured; to the extent that the field was open to the public, if at all, the public's right to use the facility and scope of its use were controlled. The field was developed, utilized and maintained for school-sponsored athletics. In <u>Hanley</u>, the plaintiff was injured in a state park where her only relationship to the property was as a recreational user of a public campground. Hanley was injured at a place the public was invited for recreational use.
>
> ... At the time of plaintiff's injury, only members of the Central Falls and Johnston soccer teams were permitted on the field. The area where plaintiff suffered her injury was an extension of the playing field.

<u>Morales</u>, 895 A.2d at 731-32 (footnote omitted).

Plaintiffs argue that applying this analysis to Mrs. Scott's claim should yield the same conclusion as in <u>Morales</u>, i.e., that the RUS does not apply. <u>See</u> Plaintiffs' Mem. at 6-8. They suggest that, like the soccer field in <u>Morales</u>, the Officers' Club is not open to the public. <u>See</u> <u>id.</u> at 6 ("It could be argued, in so far as Naval Station Newport itself is very seldom, if ever, open to the general public, the Officer[s'] Club is less so."). In support of this contention, Plaintiffs state that in order to enter the Newport Naval Station it is necessary to pass "through a security checkpoint where one must either have the requisite military identification or some other form of admittance authorizing an individual to be on the premises," <u>id.</u>, and that only after doing so may an individual enter the Officers' Club, <u>see</u> <u>id.</u>

This Court, however, has already rejected the argument that the RUS does not apply to the Newport Naval Station because it is not "continuously" open to the public for recreational purposes and, when it is open, public access is limited to certain portions of the premises. <u>Scott</u>, 2008 WL 2883789, at *3-4. As Magistrate Judge Lincoln D. Almond explained:

> There is nothing in the RUS to support [p]laintiffs' position. The RUS does not, by its express terms, condition immunity on "continuous" or "unlimited" recreational access. The stated purpose of the RUS is to encourage landowners to make their land "available to the public for recreational purposes by limiting their liability to persons entering thereon for those purposes." R.I. Gen. Laws § 32-6-1. **This legislative purpose is served regardless of whether public access is continuous, annual, occasional or a one-time event, or**

16

**whether all or a portion of the property is open to the public.**

Scott, 2008 WL 2883789, at *4 (bold added).

Judge Almond's conclusion comports with that of other courts which have considered the same question. The Ninth Circuit, in applying a similar recreational use statute enacted by the Hawaii legislature, rejected the argument that the statute did not apply because the boating dock on which plaintiff was injured was located on an Air Force Base, and the dock was closed to everyone except the instructors and students of the sailing course on the day that plaintiff was injured. Howard v. United States, 181 F.3d 1064, 1071-72 (9th Cir. 1999). In so finding, the Howard Court declared that: "The Government can exercise such control and discretion over who uses its land for recreational purposes without forfeiting the immunity that the [Hawaii Recreational Use Statute] provides." Id. at 1071. The court noted that the Hawaii Recreational Use Statute "does not contain a requirement that a landowner allow each and every individual of the general public access and use of the land ...." Id. Rhode Island's RUS similarly has no such requirement.

The Howard decision was in accordance with earlier cases which have considered similar arguments regarding application of recreational use statutes. See Mansion v. United States, 945 F.2d 1115, 1117-18 (9th Cir. 1991)(rejecting plaintiff's contention "that only land owners who allow anyone and everyone free access to their property may claim recreational immunity); Budde v. United States,

17

797 F.Supp. 731, 735 (N.D. Iowa 1991)(applying Hawaii Recreational
Use Statute and stating that "a landowner is protected by the
statute even though he limits access, provided that in limiting
access he does not impose a 'charge' for the recreational use and
providing that the persons to whom access is limited are not 'house
guests'"); id. (rejecting argument that swimming pool at officers'
club was a "private club" because it was only open to officers,
their immediate families, and certain high-ranking civilians);
Palmer v. United States, 742 F.Supp. 1068, 1072 (D. Haw. 1990)
("The Hawaii Recreational Use Statute applies to military property
even though they [sic] may be closed to the general public"); Stout
v. United States, 696 F.Supp. 538, 539 (D. Haw. 1987)(same). Other
courts considering the same issue have reached like conclusions.
See Reed v. Nat'l Council of Boy Scouts of Am. Inc., 706 F.Supp.2d
180, 187 (D.N.H. 2010)(holding that recreational use statute
applied even if use of camp was limited to boy scouts and cub
scouts); Holden ex rel. Holden v. Schwer, 495 N.W.2d 269, 274 (Neb.
1993)("[A] landowner need only allow some members of the public, on
a casual basis, to enter and use his land for recreational purposes
to enjoy the protection of the [Nebraska Recreation Liability
Act]).

Accordingly, to the extent that Plaintiffs contend that the
RUS does not apply because access to the Officers' Club can only be
obtained by entering the naval base and such access is restricted,

the Court rejects such contention.  As Judge Almond explained in
Scott, the RUS does not condition immunity on "unlimited"
recreational access.  Scott, 2008 WL 2883789, at *4.  Furthermore,

> in Morales, the Supreme Court specifically noted that the
> soccer field was not open to the public at the time of
> the injury in question.  895 A.2d at 731.  This undercuts
> [p]laintiffs' "continuous use" theory as it plainly
> suggests that the RUS may have applied if the field was
> open to the public for recreational activities at the
> time in question and not reserved for a high school
> soccer match.[6]

Id.

     Plaintiffs' next and primary argument centers on the Hanley
court's instruction to "focus on the nature and scope of activity
for which the premises are held open to the public," Hanley, 837
A.2d at 713 (italics omitted), and "to determine the character of
the premises," id.  Plaintiffs contend that "the character of the
Officer[s'] [C]lub is that of a commercial facility," Plaintiffs'
Mem. at 7, and that "[t]he nature and scope of the activity for
which the Officer[s'] Club is held open to the public is that of
revenue generation through food and beverage service," id.  The
Court is not so persuaded, at least not on the facts here.

     Mrs. Scott did not go to the Officers' Club to purchase food
or beverages.  She went to attend a private party being held there.

---

     [6] Additionally undercutting the argument is the fact that the
Morales court stated in a footnote that "if plaintiff had come to the
Johnston soccer field to play a soccer game that was not organized or
sanctioned by the school district, Johnston may have been immune under
the recreational use statute."  Morales, 895 A.2d at 732 n.11.

Defendant opened its land to allow a limited group of persons, i.e., those invited to the party, to enjoy a social event. Thus, "the nature and scope of activity for which the premises [were] held open to the public," Hanley, 837 A.2d at 713 (italics omitted), was a party to which a limited number of persons were invited. Partying falls within the broad definition of recreational activity. See id. (noting that R.I. Gen. Laws § 32-6-2(4) "should be interpreted liberally"); see also Schneider v. United States, 760 F.2d 366, 368 (1st Cir. 1985)(rejecting argument that drinking cup of coffee in national park was not recreational activity); McCaffery v. United States, No. CIVA 04-3702(FLW), 2006 WL 1644816, at *15 (D.N.J. June 7, 2006)(finding "that the activities of socializing and partying are analogous to picnicking and camping"); Lane v. Atchison Heritage Conference Ctr., 153 P.3d 541, 550 (Kan. 2007)(finding New Year's Eve party to be "a recreational event" and affirming summary judgment for defendant under recreational use exception to Kansas Tort Claims Act).

Plaintiffs focus on the fact that the Officers' Club sells food and beverages and contend that this makes the "character of the premises," Plaintiffs' Mem. at 7 (quoting Hanley, 837 A.2d at 713), commercial in nature. However, Plaintiffs overlook the fact that Defendant did not open its land to Mrs. Scott (and the other

invitees) to sell her food or beverages.[7]  Rather, Defendant opened

its land to allow her to attend a party which is a recreational

use.  See McCaffery, 2006 WL 1644816, at *15; Lane, 153 P.3d at

541.  The fact that the Officers' Club sells food and beverages to

other persons to whom Defendant has not opened its land does not

alter "the nature and scope of activity for which the premises

[were] held open to [Mrs. Scott and the other invitees]," id.[8]; see

also Lane, 153 P.3d at 550 (holding that although municipally-owned

conference center had both recreational and nonrecreational uses,

the recreational use exception applied); id. at 546; Kayser v.

_____

[7] There is no evidence that Mrs. Scott paid for any food or
beverages at the Officers' Club.  At the hearing, the Court observed that
"it seems to me that your argument would be stronger if we had a
situation where your client went to the Officers' Club and actually paid
for the food or the beverage there."  E.R.  In responding to this
observation, Plaintiffs' counsel did not indicate that Mrs. Scott had
paid for any food or beverage at the Officers' Club.  See id.
    Moreover, it bears noting that even if Mrs. Scott had purchased food
or beverages at the Officers' Club, there is authority that this would
not have changed her status as a recreational user of Defendant's land.
See Moss v. Dep't of Natural Res., 404 N.E.2d 742, 745 (Ohio 1980)
(finding that purchases of gas and food or rental of canoe in state park
did not alter the status of purchasers or renters from "recreational
users" where they could have still made use of the park facilities had
they not done so).  As in Moss, here there was no requirement for Mrs.
Scott to purchase food or beverages at the Officers' Club in order to
attend the party.

[8] Plaintiffs assert that "[t]he nature and scope of the activity for
which the Officer[s'] Club is held open to the public is that of revenue
generation through food and beverage service."  Plaintiffs' Mem. at 7.
Even assuming that by "public" Plaintiffs mean the invitees to the party,
there is no evidence that Mrs. Scott or any of the other invitees paid
for any food or drink at the Officers' Club.  Thus, Defendant did not
open its land for the purpose of obtaining revenue from these persons.
The Court recognizes that presumably the host of the party paid for the
food and beverages consumed at the party and possibly a room rental
charge.  However, the host is not the person who is bringing this action.

<u>Village of Warren</u>, 707 N.E.2d 285, 289 (Ill. App. Ct. 1999)(finding municipally-owned community building was used for both "recreational and nonrecreational activities" and that the municipality was entitled to immunity under state tort immunity act); <u>Wallace v. Metro. Pier & Exposition Auth.</u>, 707 N.E.2d 140, 144 (Ill. App. Ct. 1998)("the fact that the pier [which is owned by municipal corporation] has both a recreational and nonrecreational purpose does not defeat application of [the Illinois equivalent of a recreational use statute]"); <u>Price v. Vill. of New Madison</u>, No. 1348, 1994 WL 587548, at *4 (Ohio Ct. App. Oct. 26, 1994)("We have not found any case in which the co-existence of a recreational purpose with a non-recreational purpose has resulted in the avoidance of recreational immunity. It is only when the action itself is non-recreational that courts have found recreational immunity not to apply.").

**D. Finding Re Recreational Use Statute**

As explained above, Mrs. Scott was on the land of the Newport Naval Station only as a recreational user of the facilities there. She was not there as a customer of the Officers' Club. Plaintiffs' arguments that the RUS does not apply are rejected. Defendant had no duty to Mrs. Scott other than to refrain from willful or wanton conduct. <u>See</u> <u>Berman v. Sitrin</u>, 991 A.2d 1038, 1043-44 (R.I. 2010) ("The legislative intent [of the General Assembly in enacting the RUS] was 'to treat those who use private property for recreational

purposes as though they were trespassers.' <u>Tantimonico v. Allendale</u> <u>Mut. Ins. Co.</u>, 637 A.2d 1056, 1060 (R.I. 1994). Thus, landowners who open their land for recreational activities have no duty to the public other than to refrain from willful or wanton conduct."). Because Plaintiffs allege no more than simple negligence on Defendant's part, <u>see</u> Complaint ¶¶ 10-18, Plaintiffs cannot succeed on their claims.[9] Accordingly, treating the Motion as one for summary judgment, Defendant is entitled to judgment as a matter of law. I so recommend.

## E. Additional Finding Re Mr. Scott's Claim

Even if Defendant were not entitled to summary judgment based on the RUS, Mr. Scott's claim must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because he has failed to exhaust his administrative remedies under the FTCA. Such exhaustion is a jurisdictional prerequisite to prosecution of his claim. <u>Redondo-</u> <u>Borges v. U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d 1, 7 (1st Cir. 2005)("describing administrative scheme and explaining that '[e]xhaustion of plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of their FTCA

---

[9] Mr. Scott's loss of consortium claim is derivative in nature, and, because the RUS bars Mrs. Scott's claims, his claim is also barred. <u>See</u> <u>Desjarlais v. USAA Ins. Co.</u>, 824 A.2d 1272, 1280 (R.I. 2003)(stating that "plaintiff's loss-of-consortium claim is strictly derivative and inextricably tied to the resolution of the impaired party's claims"); <u>id.</u> at 1281 ("Because plaintiff's claim is derivative of her husband's, it is lost, diminished or barred when [her husband's] claim is so affected.")(internal quotation marks omitted).

claims'")(quoting <u>Cotto v. United States</u>, 993 F.2d 274, 280 (1st Cir. 1993)). Plaintiffs do not dispute that an administrative claim was filed only by Mrs. Scott. <u>See</u> E.R.; <u>see also</u> Plaintiffs' Mem. (offering no opposition to this argument). In addition, Mr. Scott's claim is barred by the two year statue of limitations. <u>See</u> <u>Román-Cancel v. United States</u>, 613 F.3d at 41 ("A tort claim against the United States 'shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented.'")(quoting 28 U.S.C. § 2401(b)). Mrs. Scott was injured on September 12, 2008. More than two years have passed since the incident giving rise to Mr. Scott's loss of consortium claim. Accordingly, it is barred by the statute of limitations. <u>See</u> <u>Donahue v. United States</u>, 634 F.3d 615, 622 (1st Cir. 2011)("An FTCA claim must first be presented to the affected agency. 28 U.S.C. § 2675(a). This must be done promptly: the FTCA builds in a statute of limitations forever barring any 'tort claim against the United States ... unless it is presented in writing within two years after such claim accrues.'") (quoting 28 U.S.C. § 2401(b)).

Thus, the Court lacks subject matter jurisdiction over Mr. Scott's claim. <u>Skwira v. United States</u>, 344 F.3d 64, 71 (1st Cir. 2003)(holding that "failure to comply with the FTCA's statute of

limitations means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss it"). Pursuant to Fed. R. Civ. P. 12(b)(1), it should be dismissed for this additional reason. I so recommend.

## VI. Conclusion

For the reasons explained above, I recommend that to the extent the Motion is based on the RUS it should be converted to a motion for summary judgment and granted. To the extent that the Motion with respect to Mr. Scott's claim is not based on the RUS, the Motion should be granted pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 23, 2011